IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BERLAINE SMITH MELTON**<br>*Plaintiff*<br><br>v.<br><br>**SEPTA**,<br>*Defendant* | **CIVIL ACTION**<br><br>**NO. 23-1260** |

**Baylson, J.**                                                                                             **March 18, 2024**

<u>**MEMORANDUM RE: MOTION TO DISMISS**</u>

### I.  <u>FACTUAL ALLEGATIONS</u>

Defendant SEPTA ("SEPTA") employed <u>pro se</u> Plaintiff Berlaine Melton ("Melton") in January 2022. Compl. at 6, ECF 1. Melton is a Black woman. <u>Id.</u> Prior to January 2022, Melton's "Interim Supervisor" at SEPTA made comments to her about "Hanging." <u>Id.</u> The prior supervisor also wrote negative comments in Melton's file. <u>Id.</u> Melton had made complaints about this Supervisor to the equal employment office at SEPTA. <u>Id.</u>

On January 14, 2022, Melton tore her rotator cuff and requested leave from her position. <u>Id.</u> While Melton's leave was initially approved, her supervisor later "retaliated" against Melton when she requested additional sick and vacation leave. <u>Id.</u> Due to this "retaliation," Melton was unable to receive a diagnostic MRI for an additional two months. <u>Id.</u> Melton claims her supervisor also failed to accommodate a disability in her left eye, recognized as such under the Americans with Disabilities Act ("ADA"). <u>Id.</u> Finally, the supervisor harassed Melton about her doctors appointments, and requested a hearing in March 2022 for activities that occurred in January 2022. <u>Id.</u>

1

In March 2022, SEPTA terminated Melton, citing performance review issues over the past two months. Id. Melton claims the performance review relied on the Interim Manager's, who had made "hanging" comments, opinion. Id.

## II.    PROCEDURAL HISTORY

Melton filed a charge against SEPTA on June 8, 2022 with the Equal Employment Opportunity Commission ("EEOC"), detailing her allegations that SEPTA discriminated against her because of the disability she sustained in January 2022. Compl. at 7. The EEOC issued a Notice of Right to Sue Letter on January 15, 2023, and Melton initiated this lawsuit within 90 days, on March 30, 2023, alleging that SEPTA discriminated against her because of her disability, race, and age, in violation of the ADA, Title VII, and Age Discrimination in Employment Act. Id. at 4

SEPTA moved to dismiss Melton's Title VII and ADA claims. SEPTA argues that Melton did not exhaust her Title VII claims with the EEOC prior to suit,[1] and even if she did, she failed to provide sufficient factual allegations to proceed to discovery. Def. Mot. to Dismiss at 1–2, ECF 9. Regarding the ADA, SEPTA contends that Melton did not allege she suffers from a recognized disability under federal law, but even if she did, she has not alleged a causal relationship between any protected activity and SEPTA's adverse employment decisions. Id.

After attempting, but ultimately failing to acquire an attorney with this Court's leave, Melton responded to SEPTA's motion. Pl. Resp., ECF 30.

Melton provided a copy of her initial questionnaire to the Pennsylvania Human Relations Commission (dual-filed with the EEOC), that did indicate she was complaining about racial

---

[1] SEPTA attached a copy of Plaintiff's Charge with the EEOC in its motion because exhaustion documents are "integral documents" that may be considered at the 12(b)(6) stage of litigation. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

discrimination in addition to disability accommodations. Pl. Resp. at 20–21. Because this is an integral document that Melton provided in rebuttal to SEPTA, it is properly before this Court.

Overall, Melton generally repeats the crux of her Complaint. She suffered a rotator-cuff tear on January 14, 2022, which resulted in disability. Instead of allowing her to recover from her injuries with time off, she claims SEPTA terminated her roughly two months later.

### III.   LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the same time, the Third Circuit favors substance over form—"a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (internal citations and quotations omitted).

### IV.   DISCUSSION

#### A.   Melton's American with Disabilities Claim

Under the ADA, a plaintiff presents a prima facie case of discrimination by demonstrating that:

1. [Sh]e is a disabled person within the meaning of the ADA
2. [Sh[e is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and
3. [Sh]e has suffered an otherwise adverse employment decision as a result of the discrimination.

Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010). An individual is disabled if she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Payne v. Woods Servs., Inc., 520 F. Supp. 3d 670, 678 (E.D. Pa. 2021) (Baylson, J.) (quoting 42 U.S.C. § 12102(1)).

In 2008, Congress amended the ADA to "expand[ ] the statute's non-exhaustive list of 'major life activities' and declared that the definition shall be construed in favor of broad coverage of individuals under [the] Act, to the maximum extent permitted by the terms of [the] Act." Mills v. Temple. Univ., 869 F. Supp. 2d 609, 620 (E.D. Pa. 2012) (Yohn, J.) (quotation omitted). The accompanying agency regulation reflects this broad mandate, defining an impairment as "[a]ny physiological disorder, or condition ... affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010) (quoting 29 C.F.R. § 1630.2(h)(1) (2006)). When any of these genres of impairments significantly restricts "as to the condition, manner, or duration" a major life activity, an individual is disabled. Id. And "major life activities, like "impairments" are expansive including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

As an overarching note, this Court construes the pleadings of pro se litigants liberally. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted): see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (declaring that pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."). To be sure, a pro se litigation "still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). But Melton's pro se status and the well-established protection it affords her, must be acknowledged.

Melton has both adequately alleged she suffered from a "disability" under the ADA and that she was fired as a result of her disability. Her Complaint is brief, but direct. She suffered a torn-rotator cuff on January 14, 2022 and requested time off, from work, to address her injury. Compl. at 6. It is common sense, let alone a plausible inference, that Melton asked for time off because the rotator cuff was substantially limiting her ability to work, a major life activity. And while "general," such "bare-boned" allegations are "sufficient to state a claim under the ADA." Worthington v. Chester Downs & Marina, LLC, 2017 WL 3457031, at *3 (E.D. Pa. Aug. 11, 2017) (Baylson, J.).

Admittedly, Melton will likely need to show more to survive summary judgment, but courts consistently allow less specificity at the motion to dismiss stage. See, e.g., Hudson v. Catch, Inc., 2016 WL 8716462, at *5 (E.D. Pa. Oct. 7, 2016) (Heffley, M.J) (plaintiff's allegations that he suffered "a form of PTSD" and that he had "trouble sleeping, [and] started smoking cigarettes[,]" albeit bare-boned, were sufficient to survive motion to dismiss); Alifano v. Merck & Co., 175 F. Supp. 2d 792, 797 (E.D. Pa. 2001) (Joyner, J.) (complaint sufficient when alleged condition of fibromyalgia and chronic fatigue syndrome created symptoms of "chronic fatigue, body aches and pains, headaches, nausea,

palpitations, lightheadedness, and insomnia" that hindered her work). And directly on point, courts consistently find torn-rotator cuffs to qualify as disabilities under the ADA. See Lombardo v. Air Prod. & Chemicals, Inc., 2006 WL 1892677, at *9 (E.D. Pa. July 7, 2006) (Yohn, J.) (plaintiff's "rotator cuff injury affected his lifting ability and the use of his arm and therefore constitutes a physical impairment under the ADA."); Powell v. Boscov's Dep't Store, LLC, 2024 WL 666485, at *4 (M.D. Pa. Feb. 16, 2024) (finding whether rotator cuff was disability was issue of disputed fact to be litigated at trial); DePace v. Norfolk S. Ry. Co., 2021 WL 1375504, at *1 (W.D. Pa. Apr. 12, 2021) (same).

Melton has also adequately alleged a causal connection between her protected actions—disclosure of her disability and request for accommodation in time off—and her termination. When "the "'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this is 'sufficient standing alone to create an inference of causality and defeat summary judgment.'" Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (citing LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)). Moreover, the Third Circuit has recognized that adverse employment actions taken approximately one and a half months after discovery of a disability can establish a "close temporal connection." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 (3d Cir. 2009) (describing Eighth Circuit causation holding as relying "heavily" on close temporal connection of one and half months). The proximity Melton alleges snugly aligns with the Third Circuit's discussion in Erdman.

But more, "other evidence" also allows an "inference of causation." Lichtenstein, 691 F.3d at 307. Melton alleges SEPTA treated her worse after she asked for additional time off to treat her injury, including facing harassment about her medical appointments,

6

refusing to honor a condition in her left eye, and eventually relying on a brief two-month performance review to fire her. Compl. at 6. This is enough to allege causation.

The retaliation cause of action is similar. To establish retaliation, a plaintiff must show (1) she engaged in a protected activity; (2) the employer took an adverse action either "after or contemporaneous with the employer's protected activity;" and (3) there was a "causal connection between the employer's protected activity and the employer's adverse action." Tyson v. Access Servs., 158 F. Supp. 3d 309, 315 (E.D. Pa. 2016) (Baylson, J.) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)). Unlike a "general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff ha[d] a reasonable, good faith belief that he was entitled to request the reasonable accommodation he requested." Sulima, 602 F.3d at 188 (quotations omitted). "Protected activity" includes "retaliation against an employee for requesting an accommodation." Id.

For many of the same reasons discussed, supra, Melton adequately alleged a retaliation claim. Defendants only challenged Melton's retaliation claim on causation bases, which fail under Rule 12 principles. Melton engaged in protected activity when she disclosed her disability and asked for time off to address it. SEPTA's alleged response and Melton's termination in March provides a sufficient basis to plausibly infer causation.

B. **Melton's Title VII Claim**

Defendants moved to dismiss Melton's Title VII race discrimination claim because she failed to exhaust the claim administratively before filing suit, and failed to allege sufficient facts in her complaint. This Court will address those arguments in turn.

1. <u>Melton Exhausted Her Title VII Claim</u>

Before bringing a Title VII lawsuit against her employer, a plaintiff must exhaust all administrative remedies by timely filing charges with the EEOC and receiving a right-to-sue letter after the EEOC completes its investigation. 42 U.S.C.A. § 2000e-5(e)(1); <u>Mikula v. Allegheny Cnty.</u>, 583 F.3d 181, 183–85 (3d Cir. 2009). After exhaustion, a plaintiff can only bring claims "that are within the scope of the initial administrative charge" to the EEOC. <u>Barzanty v. Verizon PA, Inc.</u>, 361 F. App'x 411, 413–14 (3d Cir. 2010) (citing <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996)).

A plaintiff sufficiently notifies the EEOC of a charge when the EEOC, based on the complaint, would know to conduct further investigation. <u>Jones v. Glenmede Trust Co.</u>, 2021 WL 2555436, at *4 (E.D. Pa. Jun. 22, 2021) (Baylson, J.). The question is one of notice to the EEOC—the "parameters of the civil action . . . are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge." <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157, 163 (3d Cir. 2013) (internal quotations and citations omitted). In this way, an EEOC complaint is fundamentally different, and requires far less specificity, than a civil complaint because the "purpose" of the "filing requirement is to enable the EEOC to investigate," and potentially "use informal, non-judicial means of reconciling the differences between the charging party and an employer." <u>Anjelino v. New York Times Co.</u>, 200 F.3d 73, 94 (3d Cir. 1999) (internal quotations and citations omitted). And finally, a court must consider that an employee's EEOC charge, when unaided by counsel, is "drafted by one who is not well versed in the art of legal description." <u>Paige v. Crozier Chester Med. Ctr.</u>, 2009 WL 533068, at *5 (E.D. Pa. Mar. 3, 2009) (Pratter, J.). Thus, the sufficiency of notice should be construed liberally. <u>Morales v. PNC Bank, N.A.</u>, 2011 WL 3425644, at *4 (E.D. Pa. Aug. 4, 2011) (Buckwalter, J.)

Courts in this Circuit and beyond have suggested that an employee sufficiently puts the EEOC on notice when she checks a box indicating the bases of discrimination. The Third Circuit has only expressly held the logical inverse, that is, the exhaustion requirement "does not necessarily preclude a plaintiff from asserting a claim for <u>the mere failure</u> to check a box on an EEOC Charge Form." <u>Barzanty</u>, 361 F. App'x at 414 (emphasis added). And courts across the country agree that a plaintiff has exhausted her administrative remedies with respect to a claim, even if she failed "to check a box indicating the specific type of discrimination on an EEOC charge," so long as "the plaintiff has alleged sufficient facts to put the EEOC on notice of the claim." <u>Seiple v. Two Farms, LLC</u>, 2021 WL 601171, at *4 (E.D. Pa. Feb. 16, 2021) (Brody, J.) (collecting case).

This Court is persuaded, at this time, that while checking a box is not a necessary condition to exhausting an EEOC charge, it is a sufficient one. Several decisions support this finding. In <u>Barzanty</u>, the Third Circuit held that a plaintiff had not exhausted because the employee "provided no facts that suggest[ed] a hostile work environment, <u>and</u> she did not check the box indicating" the bases for her charge. 361 F. App'x at 414 (emphasis added). And in <u>Mandel</u>, the Court also implied that plaintiff would have exhausted her EEOC claim if she had simply "checked the box for retaliation." <u>Mandel</u>, 706 F.3d at 164. The Court rejected that the plaintiff had exhausted her claim because she failed to check a box, and "also failed to allege any retaliatory conduct." <u>Id.</u> Reading both cases together leads this Court to the following rule: a plaintiff fails to exhaust a claim with the EEOC when she does not check the appropriate box <u>and</u> fails to detail any of the respective allegations.

On her initial questionnaire, Melton checked the box that she was discriminated against because of her race. Pl. Resp. at 20. This questionnaire qualifies as a formal charge to the EEOC.

9

Hildebrand v. Allegheny Cnty., 757 F.3d 99, 113 (3d Cir. 2014). Admittedly, Melton did not describe any racial discrimination in her questionnaire or formal charge. However, guided by the Third Circuit's precedent, this Court finds that checking the "race" box when asked to "check all reasons you have been discriminated against" was sufficient to put the EEOC on notice to investigate that claim. As such, Melton has exhausted her Title VII race discrimination claim.

2. Melton Has Not Sufficiently Pled Race Based Discrimination Under Title VII

However, the exhaustion inquiry does not conclude the analysis. Melton still needed to allege sufficient facts in her Complaint to make out a Title VII claim. She has not. Melton's only potential race-based allegation is that an interim supervisor "made comments about 'hanging'" Compl. at 6. However, without any more details about the context of this comment, when it was made, or how it related to her employment, this simply cannot evince a discriminatory motive. See Fuentes v. Perskie, 32 F.3d 759, 767 (3d Cir. 1994) ("[s]tray remarks by non-decisionmakers or decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

This Court is aware that Melton has included additional factual allegations in her response to SEPTA's motion to dismiss concerning race discrimination. Pro se litigants have greater leeway than parties represented by attorneys, but "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021). And a party may not make new factual allegations in response to a motion to dismiss, which would circumvent the "axiomatic" rule "that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. Of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); see also Hammond v. City of Philadelphia, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) (Waldman, J.) (citing Schneider v. California Dep't of Corrections, 151 F.3d

10

1194, 1197 n.1 (9th Cir. 1998)). Thus, Melton's additional allegations are not part of this Court's analysis or decision.

## V. CONCLUSION

For the foregoing reasons, this Court **GRANTS** in part, and **DENIES** in part Defendant's Motion to Dismiss. An Order will be forthcoming.

O:\CIVIL 23\23-1260 Melton v. SEPTA\23-cv-1260 Memo re Motion to Dismiss.docx