**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BERLAINE SMITH MELTON**<br>*Plaintiff,*<br><br>              **v.**<br><br>**SEPTA, SYLVIA FRITZ**, and **DENNIS PAPADEAS,**<br>*Defendants.* | **CIVIL ACTION**<br><br>**NO. 23-1260** |

Baylson, J.                                                                    September 25, 2024

<u>**MEMORANDUM RE: MOTION TO DISMISS**</u>

In this employment discrimination case, counsel for Plaintiff Berlaine Smith Melton ("Melton") took a "kitchen-sink" approach to pleading: Melton's Amended Complaint asserts nine causes of action against multiple defendants, and many of these causes of action seek to assert multiple claims. But the Amended Complaint is generally void of factual allegations, and instead asserts mere conclusions.

After review of the Amended Complaint, the Court is reminded of an infamous opera character, Mozart's Don Giovanni, a notable villain and tortfeasor who initially escapes many dire situations mostly with various women. According to the plot, Don Giovanni does not hesitate to cross many boundaries of proper behavior. The Amended Complaint in this case is similar. Melton has seized upon seven different statutes through nine counts, both federal and state, to accuse Defendants of wrongful conduct and seek damages. Although Mozart's opera contains many first-person factual accounts of Don Giovanni's improper behavior, the Amended Complaint in this case is relatively barren—there are many accusations, but few facts. Of course, we all know that Don Giovanni meets his doom and is engulfed in flames, if not worse, and the audience will almost always feel no sympathy for him. This case is just at the beginning and we do not know

how it will end, but the Court has determined that only one of Melton's claims—for discrimination related to her alleged disability—is worthy of proceeding further.  As such, this Court dismisses numerous other Counts accordingly with prejudice.

## I.    FACTUAL ALLEGATIONS

Defendant SEPTA ("SEPTA") employed Melton as a Human Resources Manager.  ECF 43 ¶ 9.  Melton is a Black woman.  Id. ¶ 10.  Prior to January 2021, Melton received positive performance reviews for her work at SEPTA.  Id. ¶ 12.

### A.  Melton's Interactions with Dennis Papadeas

In January 2021, Defendant Dennis Papadeas ("Papadeas"), a white man, became Ms. Melton's Interim Supervisor.  Id. ¶¶ 13–14.  Papadeas told Melton that her relative, a SEPTA employee, did not deserve to be in his position, was not selected based on merit, and was "only good" for being drafted by the NBA.  Id. ¶ 17.  Melton asked Papadeas about the origin of his surname, and Papadeas told Melton she was incompetent for not knowing it was Greek.  Id. ¶ 18.  Papadeas wrote a negative performance evaluation of Melton and placed her on a performance improvement plan ("PIP").  Id. ¶ 20.

In April 2021, Melton complained about Papadeas to SEPTA's internal equal employment office ("EEO").  Id. ¶ 25.  The EEO told Melton that the PIP was "not designed to hang an employee."  Id. ¶ 21.  Melton shared what the EEO said to her with Papadeas.  Id. ¶ 22.  Later, Papadeas stated that he was offended by Melton's use of the word "hang" and Melton learned that Papadeas had written Melton up for using this word.  Id. ¶¶ 27, 29.  Melton was offended by the EEO's use of the word "hang," as she had family members who were lynched.  Id. ¶ 28.

### B.  Melton's Interactions with Fritz

In March 2021, Melton applied for an open position for the role of Director of Strategic Initiatives.  Id. ¶ 23.  The position was withdrawn and then relisted; Melton again expressed interest in the role.  Id. ¶¶ 24, 26.  In July 2021, Defendant Sylvia Fritz ("Fritz") was hired as Director of Strategic Initiatives and became Melton's supervisor.  Id. ¶ 32.  Fritz asked Melton to travel by bus for a program and instead sought to use a company vehicle since the bus would be taxing.  Id. ¶ 35.  In response, Fritz suggested that Melton retire.  Id. ¶ 36.  Melton told Fritz that she wanted to pursue a doctorate, and Fritz said this would be too much for Melton.  Id. ¶¶ 37–39.

### C.  Melton's Injury, Subsequent Denial of Leave, and Termination

On January 14, 2022, Melton tore her rotator cuff.  Id. ¶ 41.  She notified Fritz of the injury and requested medical leave.  Id. ¶ 43.  Fritz initially approved Melton's leave, but on February 1, 2022, Fritz notified Melton that she could not take further leave.  Id. ¶¶ 44–45.  Melton's leave was not put into the SEPTA system, nor did she receive the correct Family Medical Leave Act ("FLMA") paperwork.  Id. ¶¶ 44–47.  Thus, Melton's time off was treated as an unexcused absence, which caused a lapse in her health insurance coverage.  Id. ¶¶ 48–50.  As a result, Melton had to reschedule an MRI for her shoulder injury.  Id. ¶ 51.

On March 1, 2022, Fritz authored a Notice of Impending Termination for Melton, noting poor performance and alleging that Melton failed to timely inform Fritz of her sick leave request and failed to complete certain FMLA paperwork.  Id. ¶ 52.  When the Notice was mailed to Melton's residence, she was staying with a relative and did not receive the Notice until after the hearing and her termination.  Id. ¶¶ 53–54.  Melton was terminated on March 15, 2022.  Id. ¶ 56.

## II.     PROCEDURAL HISTORY

Melton filed a charge against SEPTA on June 23, 2022, with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Rights Commission ("PHRC").  Id. ¶ 57.  On January 5, 2023, the EEOC issued a Right to Sue Letter and Melton timely initiated this lawsuit pro se on March 30, 2023.  Id. ¶¶ 58–59.  SEPTA moved to dismiss Melton's Complaint. ECF 9.  On March 18, 2024, this Court dismissed Melton's Title VII claim against SEPTA with leave for Melton to amend her Complaint and also denied SEPTA's motion to dismiss Melton's ADA claim.  On May 15, 2024, Melton filed an Amended Complaint through counsel, adding two individual defendants and multiple causes of action under Title VII, the ADEA, the ADA, § 1981, § 1983, and the PHRA.  ECF 43.  Defendants now move to dismiss Melton's Amended Complaint in part.  ECF 51. Defendants did not move to dismiss the disability-based retaliation (Count VI) and disability-based discrimination (Count V) claims against SEPTA.  ECF 51.

## III.     STANDARD OF REVIEW

In considering a 12(b)(6) motion to dismiss, this Court must accept all factual allegations as true and view them in the light most favorable to the plaintiff.  Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020).  To survive a motion to dismiss, a plaintiff must plead facts that, accepted as true, "state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011). A complaint is insufficient if it suggests the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555).

IV.     **DISCUSSION**

   **A. Procedural Requirements for Title VII, ADEA, ADA, and PHRA**

Before a plaintiff can sue under Title VII, ADEA, ADA, and the PHRA, she "must exhaust 'all required administrative remedies.'" Gross v. Hatboro-Horsham Sch. Dist., 2023 WL 4867423, at *4 (E.D. Pa. July 31, 2023) (Alejandro, J.) (noting ADA, ADEA, and PHRA exhaustion requirements) (quoting Mandel v. M&Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013); Mikula v. Allegheny Cnty., 583 F.3d 181, 183–85 (3d Cir. 2009) (noting Title VII exhaustion requirements).  After exhaustion, a plaintiff can only bring claims "that are within the scope of the initial administrative charge." Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 413–14 (3d Cir. 2010) (non-precedential) (citing Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)).

   **1. Exhaustion of Claims Against Papadeas**

Defendants contend that Melton's claims as to Papadeas are unexhausted because Melton neither identified Papadeas by name or title nor made allegations in her administrative charge about Papadeas.  ECF 51 at 10.  Melton asserts that her claims against Papadeas are exhausted because she checked the "race" box on her administrative form. ECF 56 at 10, 11.

A defendant must have notice of allegations against him, except "when [he] received notice" and" shares a "commonality of interest with the named party." Dulgiyer v. DePuy Synthes, 2024 WL 944220, at *5 (E.D. Pa. Mar. 5, 2024) (Papert, J.).  Melton's administrative filings do not even reference the period during which Papadeas supervised Melton and specify the date range for discrimination as beginning January 14, 2022 (after  Papadeas was no longer Melton's supervisor).  ECF 18 at 18.  Thus, the PHRC and EEOC could not have investigated Papadeas since the range of dates in Melton's administrative documents began in January 2022, nor could Papadeas have had "notice that [his] conduct [wa]s under formal review." Lynch v. Tasty Baking

<u>Co.</u>, 2024 WL 967842, at *4 (E.D. Pa. Mar. 6, 2024) (Pappert, J.).  This Court finds that Melton's Title VII, ADEA, ADA, and PHRA claims against Papadeas are unexhausted, and thus Counts I, IV, V, VI, and IX as to Papadeas warrant dismissal.

### 2. Timeliness of Claims Against Fritz

Defendants assert that Counts I, IV, and V should be dismissed as to Papadeas and Fritz as untimely because Melton's Amended Complaint was filed after the 90-day right-to-sue period. ECF 51 at 7, 9.  Defendants argue that the Amended Complaint's claims against Papadeas and Fritz do not relate back to the original complaint pursuant to Federal Rule of Civil Procedure 15(c)(1)(B) because Melton was not mistaken about their identities nor did they have notice of the claims, and thus are untimely.  ECF 54 at 8.  Melton responds that her claims relate back and that Papadeas and Fritz were on notice because they have the same attorney as SEPTA.  ECF 56 at 9–10.  Given Melton's failure to exhaust claims against Papadeas, the following analysis is made only as to Fritz.

The relation-back doctrine allows a court to treat a later-filed amended pleading as if it had been filed at the time of the initial pleading. Fed. R. Civ. P. 15(c)(1)(B).  An amendment "relates back to the date of the original pleading when . . . [it] asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." <u>Id.</u>  Since applying "Rule 15(c) involves a search for a common core of operative facts in the two pleadings[,] . . . the court looks to whether the opposing party has had fair notice . . . ." <u>Bensel v. Allied Pilots Ass'n</u>, 387 F.3d 298, 310 (3d Cir. 2004).

After Melton received a right-to-sue letter on January 5, 2023, she timely initiated this lawsuit, asserting claims under Title VII and the ADA.  ECF 2 at 3, ECF 43 ¶¶ 58–59.  Melton filed an Amended Complaint on May 15, 2024, over 90 days after issuance of the right-to-sue

letter, asserting claims under numerous statutes. ECF 43. The only additional claims in the Amended Complaint which arise from and relate back to the same set of facts as the original complaint are the ADA claim against Fritz and the PHRA claim against Fritz to the extent it relates to allegations of disability discrimination. This Court finds that Melton's Title VII and ADEA claims against Fritz were untimely.

### B.  Race Discrimination

Melton alleges race discrimination under Title VII against SEPTA, Fritz, and Papadeas (in their official capacities) (Count I) and under 42 U.S.C. § 1981 against Fritz and Papadeas (in their individual capacities) (Count II). Counts I and II are dismissed in full because Melton's pleadings rely on mere conclusions and fail to state a claim under Iqbal and Twombly.

Defendants argue that Melton's race discrimination claims fail because the only adverse employment actions Melton identified are termination, negative performance review, and being placed on a PIP, and that Melton does not allege that any of these were plausibly connected to her race or are insufficient adverse employment actions. ECF 51 at 11–12, 17. Melton opposes on the basis that Papadeas' racial bias against Melton became part of her personnel file, leading Fritz to use Papadeas' bias to assess Melton's conduct. ECF 56 at 12. Defendants reject this inference, noting that Melton does not plausibly plead that she was terminated because of her race nor allege Fritz, who terminated Melton, harbored any racial animus towards her. ECF 57 at 3.

Title VII and § 1981 claims are governed by the McDonnell Douglas Corp. v. Green, burden-shifting framework. See Patel v. CF Fresh LLC, 2024 WL 957973, at *3 (3d Cir. Mar. 6, 2024); Summers v. Child.'s Hosp. of Phila., 2021 WL 5789057, at *2 (E.D. Pa. Dec. 7, 2021) (McHugh, J.) (citing Brown v. J. Kaz, Inc., 581 F.3d 175, 181–82 (3d Cir. 2009)) (noting that elements under § 1981 are substantively identical to Title VII). To establish a prima facie case of

discrimination under <u>McDonnell Douglas</u>, a plaintiff must plead "(1) that [s]he was a member of the protected class; (2) that [s]he was qualified for h[er] position; (3) that [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." <u>Robinson v. Amtrak</u>, 2020 WL 4809640, at *11 (E.D. Pa. Aug. 18, 2020) (Baylson, J.) (citing <u>Pivirotto v. Innovative Sys. Inc.</u>, 191 F.3d 344, 352–53, 356–57 (3d Cir. 1999)).   If a plaintiff does so, an employer can articulate a "legitimate, nondiscriminatory reason for" the action.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Daniels v. Sch. Dist. of Phila.</u>, 776 F.3d 181, 193 (3d Cir. 2015).  A plaintiff can override this by showing that the employer's explanation was pretext.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802.

Count I against Papadeas and Fritz warrants dismissal because, in addition to the fact that the Counts are administratively barred as to each individual defendant, Melton cannot bring a Title VII claim against Papadeas and Fritz in their official capacities.  <u>See</u> <u>Gretzula v. Camden Cnty. Tech. Sch. Bd. of Educ.</u>, 965 F. Supp. 2d 478, 486 (D.N.J. 2013) ("Title VII provides for liability against employers, not supervisors."); <u>Thourot v. Monroe Career & Tech. Inst.</u>, 2016 WL 6082238, at *6 (M.D. Pa. Oct. 17, 2016) ("[O]fficial capacity suits are not available under Title VII where the employer is named as a defendant.").

Count I against SEPTA and Count II against all defendants warrant dismissal because Melton's allegations do not plausibly plead a prima facie case of race discrimination.  <u>See</u> <u>Robinson</u>, 2020 WL 4809640, at *11.  Melton's allegations, such as the EEO telling her that the PIP was "not designed to hang an employee," <u>id.</u> ¶ 21, are inactionable stray remarks.  <u>See</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 767 (3d Cir. 1994) ("Stray remarks by non-decisionmakers or decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").  The record lacks any indication that

Melton was terminated or denied leave based on race.  See Wiggins v. Universal Prot. Servs., 2022 WL 493410, at *8 (E.D. Pa. Feb. 17, 2022) (Goldberg, J.), aff'd, 2022 WL 4116912 (3d Cir. Sept. 9, 2022) ("No circumstantial evidence connects the adverse employment action with [p]laintiff's status as a male."); Jordan v. Staffing Plus, Inc., 315 F. Supp. 3d 844, 847 (E.D. Pa. 2018) (Rufe, J.) (dismissing § 1981 claim where the claim rested on bare assertion and did not allege facts to link termination and race).  An inference of discriminatory intent based on Melton's speculation that Papadeas' racial bias became part of Melton's personnel file and was considered in her termination, ECF 56 at 12, is too far-fetched.  Wiggins, 2022 WL 493410, at *8 ("[S]peculation" that an action was taken because of membership in a protected class "fails to create any plausible inference of [class-based] animus.").

### C.  Age Discrimination

Melton asserts ADEA age-discrimination claims against SEPTA, Papadeas, and Fritz (in their official capacities).  ECF 43 ¶¶ 80–86.  Defendants move to dismiss Count IV.  ECF 51 at 4. Defendants argue that Melton did not allege an age-based adverse employment action nor severe or pervasive age-based harassment.  Melton argues that comments made by Fritz, e.g., ECF 43 ¶¶ 34–38, establish a reasonable inference that Melton would not have been terminated but-for Fritz's age-related bias, ECF 56 at 13.  Defendants note that Melton does not allege a factual basis to plead that SEPTA terminated her because of her age.  ECF 57 at 4.  Melton withdrew her ADEA claim against Papadeas.

The ADEA provides for individual liability where the individual qualifies as a plaintiff's "employer."  See Holocheck v. Luzerne County Head Start, 385 F. Supp. 2d 491, 496 (M.D. Pa. 2005) (noting that Third Circuit has found no individual liability under Title VII, and Title VII and ADEA definitions of definitions of "employer" are virtually identical).  Where a plaintiff relies on

circumstantial evidence for an ADEA claim, the claim is subject to the <u>McDonnell Douglas</u> framework. <u>Willis v. UPMC Children's Hosp. of Pittsburgh</u>, 808 F.3d 638, 644 (3d Cir. 2015).

Count IV is dismissed as to SEPTA because Melton fails to plead facts alleging age discrimination. Rather, she only asserts conclusions. Melton alleges that she was 62 years old when she was terminated, but does not plead that she was terminated because of her age nor establish a non-conclusory link between her age and termination. See <u>Carson v. Willow Valley Communities</u>, 2018 WL 827400, at *4 (E.D. Pa. Feb. 12, 2018) (Leeson, J.), <u>aff'd</u>, 789 F. App'x 310 (3d Cir. 2019) (non-precedential) (dismissing ADEA claim where plaintiff failed to allege age-based adverse action and "only contend[ed] that he was over forty years of age and was terminated").

Count IV against Papadeas and Fritz warrant dismissal because, in addition to the fact that the Counts are administratively barred as to each individual defendant, Melton cannot bring ADEA claims against Fritz and Papadeas in their official capacities. See <u>McIlmail v. Pennsylvania</u>, 2018 WL 1071927, at *3 (E.D. Pa. Feb. 27, 2018) (Joyner, J.) (dismissing ADEA claim against official capacity defendants) (citing <u>Kimel v. Fl. Bd. of Regents</u>, 528 U.S. 62, 91 (2000)); <u>Acevedo v. Monsignor Donovan High Sch.</u>, 420 F. Supp. 2d 337, 347 (D.N.J. 2006) (dismissing official capacity claim where person was not plaintiff's employer and employer was already defendant).

### D. Disability Discrimination

Melton asserts ADA disability discrimination claims against SEPTA, Papadeas, and Fritz (in their official capacities). ECF 43 ¶¶ 80–86. Defendant seeks dismissal of this Count against Papadeas and Fritz. ECF 54 at 3. Defendants assert that Melton failed to state a claim for ADA disability discrimination as to Papadeas because the injury purportedly giving rise to the claim

occurred after Papadeas was no longer Melton's supervisor.  ECF 51 at 18, ECF 57 at 2.  In her response, Melton withdraws her ADA claim against Papadeas.  ECF 56 at 16.

Claims "for individual damages liability under Title II of the ADA fail" because "there is no such liability," <u>Kokinda v. Pa. Dep't of Corr.</u>, 779 F. App'x 938, 942 (3d Cir. 2019) (non-precedential), and has held that only "prospective relief against state officials acting in their official capacities may proceed under the" ADA, <u>Koslow v. Commonwealth of Pa.</u>, 302 F.3d 161, 178 (3d Cir. 2002).  Count V against Papadeas and Fritz warrant dismissal because, in addition to the fact that the Counts are administratively barred as to each individual defendant and was withdrawn as to Papadeas, Melton is not seeking prospective relief against Papadeas and Fritz.

**E.  § 1983 Claims**

Melton asserts <u>Monell</u> claims against SEPTA, Papadeas, and Fritz (in their official capacities) for a policy or custom of inadequately addressing racism and § 1983 claims against Papadeas and Fritz (in their individual capacities).  Counts VII and VIII are dismissed.  Melton fails to establish a constitutional violation, further fails to plausibly plead municipal liability for SEPTA, and withdrew her <u>Monell</u> claims against Fritz and Papadeas, ECF 56 at 16.

Defendants assert that § 1983 claims fail because Melton alleges neither an adverse employment action nor disparate treatment.  ECF 51 at 20.  In opposition, Melton asserts that SEPTA has a policy or custom of "inadequate policies for responding to and redressing racism" as established by CEO Leslie Richards.  ECF 43 ¶¶ 31, 105–06.  Melton alleges that the internal EEO used the word "hang" in reference to the EEO telling Melton's that the PIP was not "intended to hang" her,  <u>id.</u> ¶ 27, and in her briefing states that the EEO complaint had no consequences. Defendants also assert that Melton fails to allege facts demonstrating a policy as is required for

11

§ 1983 municipal liability.  ECF 51 at 20.  Melton argues she stated a <u>Monell</u> claim against SEPTA because nothing resulted from the EEO charge that Melton filed against Papadeas. ECF 56 at 14.

Melton asserts § 1983 claims for violation of the Fourteenth Amendment Equal Protection Clause ("EPC") on the basis of race.  ECF 43 ¶¶ 98–102.  A plaintiff bringing a § 1983 EPC claim must allege that a state actor discriminated against her because of her membership in a protected class.  <u>See</u> <u>Smith v. McClendon</u>, 2015 WL 2079689, at *5 (E.D. Pa. May 5, 2015) (Slomsky, J.). Melton makes only conclusory allegations about unequal treatment on the basis of race and does not state a valid § 1983 claim.   And even if Melton plausibly alleged constitutional violations, her <u>Monell</u> claim against SEPTA still fails because she did not allege a municipal policy or custom. <u>See</u> <u>Brown v. SEPTA</u>, 539 F. App'x 25, 27 (3d Cir. 2013) (non-precedential) (noting that SEPTA is a municipality for purposes of § 1983); <u>Thompson v. SEPTA</u>, 2021 WL 2414610, at *3 (E.D. Pa. June 14, 2021) (Sánchez, C.J.), <u>aff'd</u>, 2022 WL 17958629 (3d Cir. Dec. 27, 2022) (same).

A plaintiff has two routes to plead municipal liability under § 1983.  First, a plaintiff can allege that a policy or custom violated her constitutional rights.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).  Second, a plaintiff can allege that her injury was caused by something that reflects a deliberate or conscious choice by the municipality.  <u>See</u> <u>Est. of Roman v. City of Newark</u>, 914 F.3d 789, 7989 (3d Cir. 2019)).  Melton does neither.

Melton has not alleged a SEPTA policy or custom with specificity.  <u>See</u> <u>McTernan v. City of York, PA</u>, 564 F.3d 636, 658 (3d Cir. 2009); <u>Est. of Roman</u>, 914 F.3d at 798 (noting that alleging a municipality ignored or disregarded constitutional rights "is not sufficient"). The bases that Melton pleads for a purported policy or custom, as noted above, are insufficient.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678, 684; <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing <u>Monell</u>, 436 U.S. at 690).  Nor does Melton plausibly plead that her "suffering, humiliation, shame, and

mental anguish," ECF 43 ¶ 107, were caused by a failure or inadequacy by SEPTA that reflects a deliberate or conscious choice.  See Est. of Roman, 914 F.3d at 798–99.

### F.  Count IX: PHRA

Melton asserts violations of the PHRA against SEPTA, Papadeas, and Fritz.  ECF 43 ¶¶ 108–10.  Melton asserts that Defendants exhibited unlawful discriminatory and retaliatory employment practices under the PHRA.  Id. ¶ 109.  Melton does not specify whether her PHRA claim relates to her disability, age, or race.  Defendants move to dismiss all non-disability discrimination related portions of Melton's claims under the PHRA.  This Court grants this motion.

Melton's PHRA claims are subject to the McDonnell Douglas test.  See Oden v. SEPTA, 671 F. App'x 859, 862 n.4 (3d Cir. 2016) (non-precedential); Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (citations and internal quotation marks omitted) (interpreting PHRA "in accord with its federal counterparts" because PHRA and ADA are "basically the same").  Count IX is dismissed as to Papadeas due to lack of exhaustion and as to Fritz as untimely except for portions related to purported disability, and as to SEPTA except for portions related to purported disability.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) ("[Pennsylvania courts] generally interpret the PHRA in accord with its federal counterparts.").

### G.  Count VI: Retaliation

Melton brings retaliation claims in violation of the ADA, ADEA, Title VII, PHRA, and § 1981 against SEPTA, Fritz, and Papadeas (in their official capacities).  ECF 43 ¶¶ 94–97. Defendants seek to dismiss Count VI as to Papadeas and Fritz and as to all Defendants to the extent they relate to Melton's alleged April 2021 internal EEO complaint.  ECF 51.

Defendants seek to dismiss Melton's retaliation claims as to Papadeas and Fritz, and to the extent the claims relate to Melton's April 2021 internal EEO complaint.  ECF 51 at 23, ECF 57 at

3.  Melton argues that Papadeas' racial animus became part of Melton's personnel file after she filed the EEO charge in April 2021, and that this remained as part of her file until her termination. ECF 56 at 16.  Melton claims Fritz considered this information when deciding not to grant Melton's time off and to terminate her.  Id. at 16.  Defendants argue that Melton does not allege that Fritz knew of the EEO complaint and that the complaint and termination were too far apart to be linked.  ECF 57 at 3.

Retaliation claims are subject to the McDonnell Douglas test.  See Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022).  As such, Count VI is dismissed as to SEPTA relating to the ADEA, Title VII, and § 1981, and to the extent it relates to the April 2021 internal EEO complaint within SEPTA.  Melton pleads a prima facie case of disability discrimination under the PHRA as to Fritz, and under the ADA and PHRA as to SEPTA.

Count VI is dismissed as to Papadeas for the ADA, ADEA, Title VII and PHRA due to lack of exhaustion, and for § 1981 for failing to state a claim.  Count VI is dismissed as to Fritz for the ADEA and Title VII as untimely, for § 1981 for failing to state a claim, and for the ADA because Melton does not seek prospective relief.  See Koslow, 302 F.3d at 178.  Count VI as to Fritz is not dismissed as to the PHRA only as it relates to allegations of retaliation based on purported disability.

### H.  Leave to Amend

Melton seeks leave to file an Amended Complaint should this Court grant Defendants' motion to dismiss.  Defendants oppose leave on the basis that Melton had the opportunity to amend her complaint and was on notice of her deficiencies.  ECF 57 at 5, 6.  Federal Rule of Civil Procedure 15(a)(2) permits courts to "freely give leave" to amend "when justice so requires." Mullin v. Balicki, 875 F.3d 140, 149–50 (3d Cir. 2017).  This Court has the discretion to determine

whether to grant leave, id., and may deny it "based on undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice[;] and futility."  Gillman for Pomper v. AAA Mid-Atl. Ins. Grp., 2024 WL 3824861, at *5 (E.D. Pa. Aug. 14, 2024) (citing Mullin, 875 F.3d at 149–50; Sharpe v. Medina, 2011 WL 3444230, at *3 (D.N.J. Aug. 8, 2011), aff'd, 450 F. App'x 109 (3d Cir. 2011) ("Nor is leave to amend proper in light of the futility of an unexhausted claim.") (citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

While a court can grant leave "when justice so requires," Mullin, 875 F.3d at 149–50, after carefully considering the pleadings and procedural history of this case, this Court concludes that dismissal of the claims detailed in this memorandum is appropriate "pursuant to its inherent authority to manage its docket."  Lee v. Krieg, 227 F. App'x 146, 148 (3d Cir. 2007) (non-precedential).

## V.   **CONCLUSION**

For the foregoing reasons, this Court **GRANTS in part with prejudice** and **DENIES in part** Defendant's Motion to Dismiss.  The Court dismisses Counts I, II, III, IV, VII, VIII without leave to amend.  The Court dismisses Count V as to Papadeas and Fritz without leave to amend. The Court dismisses Count VI without leave to amend as to Papadeas, as to Fritz for the ADA, ADEA, Title VII, § 1981, and the PHRA (to the extent the claim rests on non-disability related allegations), and as to SEPTA regarding claims relating to Melton's April 2021 internal complaint. The Court dismisses Count IX without leave to amend as to Papadeas in full and as to Fritz and SEPTA in part for allegations other than discrimination on the basis of disability.  An appropriate **ORDER** follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 23\23-1260 Melton v. SEPTA\23-cv-1260 Memorandum Second Motion to Dismiss.docx

15